**Michael David ALLEN, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–03–404–CR.**

Court of Appeals of Texas, Fort Worth.

Nov. 17, 2005.

---

The Dunham Law Firm, John L. Fritz, Fort Worth, for appellant.

Tim Curry, Criminal Dist. Atty., Charles M. Mallin, Asst. Criminal Dist. Atty. and Chief of the Appellate Section, Curtis Jenkins, Miles Brissette and Timothy Bednarz, Asst. Criminal Dist. Attys., Fort Worth, for appellee.

PANEL A: CAYCE, C.J.; DAUPHINOT and GARDNER, JJ.

## OPINION

JOHN CAYCE, Chief Justice.

### Introduction

Appellant Michael David Allen appeals his convictions for aggravated sexual assault of a child under fourteen years of age and indecency with a child. In three points, appellant contends that the evidence is factually insufficient to support his convictions and that the trial court erred in failing to limit the jury's consideration of extraneous offense evidence during the guilt-innocence phase of the trial and allowing the jury to deliberate with fewer than twelve jurors present. We affirm.

### Background Facts and Procedural History

In May 2001, when A.J. was about twelve years old, he moved into a house in White Settlement, Texas with his mother, one of his younger brothers, appellant, appellant's twenty-year-old daughter, and the daughter's boyfriend. Appellant was A.J.'s mother's boyfriend. Over the next few months, A.J.'s mother and appellant's daughter observed several instances of suspicious activity between appellant and A.J.

On one occasion, when A.J.'s mother was out of town, appellant's daughter noticed that A.J. was not sleeping in the room he shared with his brother. When she went to appellant's bedroom to ask where A.J. was, she found the door locked. Without opening the door, appellant told his daughter that A.J. was in the room with him watching television. The next morning, she saw that A.J. had not returned to his own bedroom to sleep. When she confronted appellant, he explained that A.J. had fallen asleep in his room.

Another time, appellant's daughter came home to find the front door locked—which was uncommon when someone was home—and A.J.'s brother playing next door. After using her key to enter the house, she observed appellant, who was not wearing a shirt and whose hair was wet, exiting the bathroom where A.J. was taking a shower.

A third incident occurred when appellant's daughter returned home early from the laundromat. Once again, she had to unlock the front door with her key. As she walked past appellant's bedroom, he opened the bedroom door and she could see A.J. standing behind him, buttoning his pants.

When appellant's daughter shared her concerns with A.J.'s mother, A.J.'s mother admitted that she had witnessed a similar incident. A.J.'s mother testified that, upon returning home from driving one of her children to Midlothian, she found A.J.'s brother taking a bath in the hallway bathroom and appellant in his bedroom with

the door locked. She knocked on the bedroom door for about five minutes before appellant opened it. When he did, she saw A.J. in the master bathroom pulling up his pants.

Shortly after appellant's daughter discussed the situation with A.J.'s mother, a friend in whom appellant's daughter had confided reported the suspected abuse to Child Protective Services (CPS). When questioned, A.J. gave the police a written statement indicating that appellant had tried to perform oral sex on him one time when his mother was at the laundromat. Similarly, he told the doctor who performed the sexual abuse examination that he had avoided appellant's attempt to have anal and oral sex with him one time when his mother was at the laundromat. He also indicated that appellant had abused him on other occasions, attempted to have anal sex with him once in a motel, and masturbated in front of him.

Appellant was indicted for the first-degree felony offense of aggravated sexual assault of a child under fourteen years of age and the third-degree felony offense of indecency with a child-exposure. He pleaded not guilty to the charges and was tried before a jury.

During the guilt-innocence phase of trial, A.J.'s mother and appellant's daughter testified about the incidents described above. A.J.'s mother also testified that A.J. had previously reported being sexually abused by appellant when the family lived in Henderson County, Texas. She explained that A.J.'s outcry to a camp counselor was investigated by the police and CPS, but resulted in a no-bill from a Henderson County grand jury. She further testified that appellant quit his job of twenty years and moved from Texas to Washington state when CPS began investigating the report that led to the current charges. A.J. testified that appellant performed oral sex on him at least four times, offered A.J. money to perform oral sex on him, and exposed himself to A.J. when they lived in White Settlement. Further, he testified that appellant attempted to have anal sex with him in either White Settlement or their previous home in Henderson County. He also recalled numerous instances of abuse that took place in Henderson County. The doctor who examined A.J. also testified to the statements A.J. made to her.

The jury found appellant guilty of the charged offenses and assessed his punishment at forty-six years' incarceration for aggravated sexual assault and ten years' incarceration for indecency with a child.

## Factual Sufficiency of the Evidence

In his first point, appellant contends that the State failed to provide factually sufficient evidence to support his conviction for aggravated sexual assault of a child because A.J.'s testimony was vague, it conflicted with a statement he had given to police, and it was contradicted by other evidence in the record. Appellant further argues that the evidence is factually insufficient to prove indecency with a child because the State relied on A.J.'s testimony together with circumstantial and inconclusive evidence from appellant's wife and daughter. We disagree.

 In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.[1] The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding

1. See Zuniga v. State, 144 S.W.3d 477, 481 (Tex.Crim.App.2004).

guilt beyond a reasonable doubt.[2] There are two ways evidence may be factually insufficient: (1) the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.[3] "This standard acknowledges that evidence of guilt can 'preponderate' in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt." [4] In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.[5]

■ In performing a factual sufficiency review, we are to give deference to the fact finder's determinations, including determinations involving the credibility and demeanor of witnesses.[6] We may not substitute our judgment for that of the fact finder's.[7] A factual sufficiency review of circumstantial evidence is the same as a review of direct evidence.[8]

■ A person commits the offense of aggravated sexual assault if he intentionally or knowingly causes the sexual organ of a child to contact or penetrate the actor's mouth.[9] A person commits the offense of indecency with a child-exposure if, with a child younger than seventeen years and not the person's spouse, the person exposes the person's anus or any part of the person's genitals, knowing the child is present, with the intent to arouse or gratify the sexual desire of any person.[10] When the evidence in this case is viewed in a neutral light, it rationally justifies the jury's findings that appellant sexually assaulted and exposed himself to A.J. The evidence supporting each element of the charged offenses is strong enough to support a finding of appellant's guilt beyond a reasonable doubt and the supposedly contradictory evidence cited by appellant is not strong enough to negate that finding.

Standing alone, A.J.'s testimony that appellant performed oral sex on him at least four times when they lived in White Settlement is sufficient to sustain appellant's conviction for aggravated sexual assault, and his testimony that appellant exposed himself to him supports appellant's conviction for indecency with a child.[11] Appellant's convictions are further supported by the doctor's testimony and the testimony of A.J.'s mother and appellant's daughter. The doctor's testimony that A.J. told her about appellant masturbating in front of A.J. supports the indecency with a child charge, and her testimony that A.J. said

2. *Id.* at 484.

3. *Id.* at 484–85.

4. *Id.* at 485.

5. *Id.*

6. *Id.* at 481; *Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App.1997).

7. *Zuniga,* 144 S.W.3d at 482.

8. *King v. State,* 29 S.W.3d 556, 565 (Tex.Crim. App.2000); *Kutzner v. State,* 994 S.W.2d 180, 184 (Tex.Crim.App.1999).

9. TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii) (Vernon Supp.2005).

10. *Id.* § 21.11 (Vernon 2003).

11. *See West v. State,* 121 S.W.3d 95, 111 (Tex. App.-Fort Worth 2003, pet. ref'd); *Empty v. State,* 972 S.W.2d 194, 196 (Tex.App.-Dallas 1998, pet. ref'd) (both holding that a child's uncorroborated testimony is sufficient to support a sexual assault conviction).

appellant abused him before the laundromat incident supports the aggravated sexual assault charge. A.J.'s mother's and appellant's daughter's testimony, though circumstantial, supports both charges by showing that appellant and A.J. spent time alone together in closed rooms in various states of undress.

Appellant cites inconsistent testimony from A.J. and evidence of A.J.'s motivation to fabricate the allegations against him as contradictory evidence. Although A.J. testified about numerous incidents of abuse, his written statement mentions only one of appellant's attempts to perform oral sex on him. Nothing in the written statement, however, indicates that A.J. intended it to be a complete account of his sexual abuse history. Rather than contradict his written statement, A.J.'s testimony simply revealed more of the abuse.

Other alleged inconsistencies pointed out by appellant are the different answers given by A.J. when he was asked whether appellant had exposed himself to him. When A.J. was questioned about appellant giving him oral sex, he said that appellant did not expose himself. Later, when A.J. was asked whether appellant exposed himself when he offered A.J. money to perform oral sex on him, A.J. said that he had. A.J.'s answers are not clearly contradictory because the exposure questions were asked in different contexts. It is entirely possible that appellant exposed himself when he was trying to persuade A.J. to give him oral sex, but not when he was performing oral sex on A.J.

■ Appellant also contends that the evidence of A.J.'s motivation to fabricate the allegations against him was strong enough to negate the jury's findings of guilt. Appellant attacked A.J.'s credibility by alleging that A.J. lied about the abuse

because he wanted his mother and father to reunite. A.J.'s mother testified that A.J. loved his father and wanted her to get back together with him. She testified that the children's babysitter reported overhearing A.J. tell a friend that "CPS was going to believe him because Mommy and Daddy are going to get back together." A.J.'s mother also testified, however, that A.J. loved appellant. The jury was the factfinder in this case and, as such, it was the jury's responsibility to resolve any conflicts in the testimony.[12] Moreover, we may not substitute our judgment for that of the jury on the issue of witness credibility.[13]

Because the evidence supporting each element of the offenses charged is strong enough to support a finding of appellant's guilt beyond a reasonable doubt and there is no contradictory evidence strong enough to negate that finding, we hold that the evidence is factually sufficient to support both of appellant's convictions. We overrule appellant's first point.

### Extraneous Offense Reasonable Doubt Instruction

■ In his second point, appellant complains that the trial court erred by failing to include a reasonable doubt instruction regarding extraneous offense evidence in the jury charge at guilt-innocence. It is undisputed that appellant never requested such an instruction. It is also undisputed that appellant never objected to the admission of the extraneous offenses he allegedly committed in Henderson County or requested a limiting instruction when the evidence was admitted or at the charge conference. Appellant contends, however, that the trial court was required to instruct the jury sua sponte not to consider evidence of extraneous offenses he committed against A.J. unless his commission

---

**12.** *See Dumas v. State*, 812 S.W.2d 611, 615 (Tex.App.-Dallas 1991, pet. ref'd).

**13.** *Empty*, 972 S.W.2d at 196–97.

of those offenses was proven beyond a reasonable doubt.

Article 38.37 of the code of criminal procedure provides that, in a sexual assault of a child case, evidence of extraneous offenses committed by the defendant against the child is admissible to show the state of mind of the defendant and child and their previous and subsequent relationship.[14] Because all of the extraneous offense evidence in this case pertains to offenses that appellant committed against A.J., it was admissible under article 38.37.[15] Further, because appellant failed to request a limiting instruction at the time the extraneous offense evidence was admitted, it was admitted for all purposes.[16]

In *Huizar v. State*, the court of criminal appeals held that the reasonable doubt instruction mandated by article 37.07, section 3(a) is statutorily prescribed law applicable to the case at the punishment phase of a noncapital trial.[17] Therefore, the *Huizar* court held a trial court must sua sponte include a reasonable doubt instruction regarding extraneous offense evidence at the punishment phase of trial.[18]

Article 37.07, section 3(a) is not, however, the law applicable to the case at the guilt-innocence phase of trial; the statutory language specifically restricts its application to the punishment phase.[19] Moreover, appellant has not cited any case, and our research has revealed none, in which the court of criminal appeals has held that a sua sponte reasonable doubt instruction regarding extraneous offenses is required at guilt-innocence.[20] Accordingly, we decline to extend *Huizar* to hold that a sua sponte reasonable doubt instruction regarding the extraneous offense evidence was required at the guilt-innocence phase of appellant's trial.[21] We overrule appellant's second point.

### Jury Misconduct

 In his final point, appellant complains that some jurors engaged in

---

14. Tex.Code Crim. Proc. Ann. art. 38.37, §§ 1–2 (Vernon Supp.2005); *see also* Tex.R. Evid. 404(b).

15. The extraneous offense evidence consisted of A.J.'s mother's testimony about A.J.'s outcry to a camp counselor when they lived in Henderson County; A.J.'s testimony that appellant masturbated in front of him, made A.J. rub appellant's genitals, and sucked on A.J.'s toes in Henderson County, and that appellant attempted to have anal sex with him in Henderson County or White Settlement; and the doctor's testimony that A.J. told her appellant had attempted to have anal sex with him.

16. Tex.R. Evid. 105(a); *Hammock v. State*, 46 S.W.3d 889, 895 (Tex.Crim.App.2001).

17. 12 S.W.3d 479, 483 (Tex.Crim.App.2000); *see* Tex.Code Crim. Proc. Ann. art. 36.14 (Vernon Supp.2005).

18. *Huizar*, 12 S.W.3d at 484. Appellant received such an instruction at punishment in this case.

19. *See* Tex.Code Crim. Proc. Ann. art. 37.07, § 3(a).

20. The court of criminal appeals has held only that such an instruction is required if the defendant requests one. *See, e.g., Ex parte Varelas*, 45 S.W.3d 627, 631 (Tex.Crim.App. 2001) (citing *Mitchell v. State*, 931 S.W.2d 950, 954 (Tex.Crim.App.1996) (plurality op.) and *Harrell v. State*, 884 S.W.2d 154, 157 (Tex.Crim.App.1994)).

21. The intermediate courts of appeals are split over whether *Huizar* should be extended to require a sua sponte reasonable doubt instruction for extraneous offense evidence at guilt-innocence. *See Rodriguez v. State*, 137 S.W.3d 228, 231 (Tex.App.-Houston [1st Dist.] 2004, no pet.); *Gilbert v. State*, No. 14–02–00727–CR, 2003 WL 22176625, at *4 (Tex. App.-Houston [14th Dist.] Sept. 23, 2003, no pet.) (mem.op.) (not designated for publication); *Salazar v. State*, No. 07–01–00389–CR, 2002 WL 246642, at *3 (Tex.App.-Amarillo Feb. 21, 2002, pet. ref'd) (not designated for publication) (all refusing to extend *Huizar* to

misconduct by deliberating before all twelve jurors were present and by conducting independent research on the recidivism rate of child molesters. To preserve a complaint for our review, a party must make a timely, specific objection and must obtain an adverse ruling from the trial court.[22] Because appellant raised his juror misconduct complaint for the first time on appeal, he failed to preserve it. We overrule appellant's third point.

### Conclusion

Having overruled all of appellant's points, we affirm the trial court's judgment.

guilt-innocence phase jury charge). *But see Rodgers v. State*, Nos. 10–04–00280–CR, 10–04–00281–CR, 180 S.W.3d 716, 723–24, 2005 WL 2787566, at *5–6 (Tex.App.-Waco Oct. 26, 2005, no pet.) (holding that sua sponte reasonable doubt instruction regarding extraneous offenses is required at guilt-innocence because it is "law applicable to the case"); *Chapa v. State*, No. 04–02–00346–CR, 2003 WL 1025148, at *1 (Tex.App.-San Antonio Mar. 12, 2003, pet. ref'd) (mem.op.) (not designated for publication); *Arnold v. State*, No. 05–01–01733–CR, 2002 WL 31565937, at *1 (Tex.App.-Dallas Nov. 20, 2002, no pet.) (not designated for publication) (both assuming that *Huizar* applies to extraneous offense evidence admitted at guilt-innocence).

22. Tex.R.App. P. 33.1(a).