

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00747-CV

**ABRUZZO, LLC**,
Appellant

v.

James **WALESA**,
Appellee

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-CI-17006
Honorable David Berchelmann Jr., Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:       Karen Angelini, Justice
               Marialyn Barnard, Justice
               Rebeca C. Martinez, Justice

Delivered and Filed:  March 27, 2013

AFFIRMED

This is an interlocutory appeal from the trial court's order granting appellee James Walesa's special appearance.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (West Supp. 2012).  Appellant Abruzzo, LLC contends the trial court erred in granting Walesa's special appearance because Walesa committed torts in Texas that subject him to specific jurisdiction in Texas courts.  We affirm the trial court's judgment.

**BACKGROUND**

Walesa is a managing member of Apache Real Estate Partners, LLC, a Delaware Limited Liability Company. In 2006, Apache purchased property relating to a commercial shopping center ("the Property") in Bexar County, Texas. In 2008, Apache entered into a Purchase and Sale Agreement of the Property ("the Purchase Agreement") with Angelo Cardarelli, who later assigned his buyer's rights under the Purchase Agreement to Abruzzo prior to closing. As a managing member and on behalf of Apache, Walesa signed the Purchase Agreement and the Special Warranty Deed.

As part of the terms of the Purchase Agreement, the buyer was to be provided, among other documents, with "[a] copy of any building inspection, environmental audits for the Property or of any other study concerning the condition of the improvements and/or compliance with applicable laws" and "[a]ny warranty of the structural, mechanical, electrical, HVAC, plumbing, or roof, or of any other personal property that is included in the Property."

Abruzzo asserts that after the closing, Cardarelli learned Apache purchased the property in April 2006, and between 2004 and 2006, a number of tests, investigations, and reports were made relating to the water, sewer lines, and foundation of the Property. Cardarelli also learned extensive repairs were performed on the foundation in 2006, and alleges those repairs were required by Walesa to be completed as a condition to Apache's purchase of the Property in 2006.

After Cardarelli purchased the Property and assigned its rights to Abruzzo, Abruzzo began experiencing problems with the foundation of the Property. Abruzzo alleges it did not receive any documents related to the Property's maintenance as required by the Purchase Agreement. Walesa asserts there is no evidence Abruzzo was neither advised of the foundation

repairs, nor provided with any of the pertinent reports, contracts, or warranties as expressly required under the terms of the Purchase Agreement.

Abruzzo alleges Walesa, acting as the agent of Apache, had personal knowledge of the prior repairs and foundation problems, and had a duty to disclose this information to Abruzzo. Abruzzo argues Walesa not only failed to disclose, but actively concealed the Property's problems from Abruzzo.

Abruzzo filed suit against Apache and Walesa for violations of the Texas Deceptive Trade Practices Act, fraud in a real estate transaction, common law fraud, and breach of contract. In response, Walesa filed a special appearance, claiming among other things that: (1) he was acting as an agent for Apache at all times related to the transaction at issue in this case; (2) he is not a resident of Texas, and is not required and does not maintain a registered agent for service in Texas; (2) he was served with process outside of Texas; (4) he does not maintain a place of business in Texas and has no employees, servants, or agents in Texas; and (5) he has not engaged in business in Texas, or committed any tort, in whole or in part, within the State of Texas at any time pertinent to these proceedings.

The trial court held a hearing on Walesa's special appearance, granted his special appearance, and dismissed all claims against him for lack of jurisdiction. Abruzzo then perfected this appeal.

## ANALYSIS

Abruzzo argues the trial court erred in granting Walesa's special appearance because Walesa committed torts in Texas that subject him to specific jurisdiction in Texas courts.

### *Standard of Review*

Whether a court has jurisdiction over a nonresident defendant is a question of law subject to de novo review. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *Griffith v. Griffith*, 341 S.W.3d 43, 49 (Tex. App.—San Antonio 2011, no pet.). In a de novo review, we exercise our own judgment and examine each legal issue, without any deference to the trial court. *Hotels.com, L.P. v. Canales*, 195 S.W.3d 147, 151 (Tex. App.—San Antonio 2006, no pet.) (quoting *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998)). When the trial court, as in this case, issues findings of fact and conclusions of law in support of its ruling, this court may review the fact findings for legal and factual sufficiency. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *Horowitz v. Berger*, 377 S.W.3d 115, 122 (Tex. App.—Houston [14th Dist.] 2012, no pet.). If there is more than a scintilla of evidence to support the finding, the no-evidence challenge fails. *Id.*

### *Applicable Law*

Texas courts may assert personal jurisdiction over a nonresident if: (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees. *Moki Mac*, 221 S.W.3d at 574 (citing *Schlobohm v. Shapiro*, 784 S.W.2d 355, 356 (Tex. 1990)). The exercise of personal jurisdiction will not violate due process when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Id.* at 575.

Personal jurisdiction exists if a nonresident defendant's minimum contacts give rise to either specific or general jurisdiction. *BMC Software*, 83 S.W.3d at 795–96. Specific jurisdiction is established if the defendant's alleged liability arises from or is related to an

activity performed in the forum. *Id.* at 796; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(1). General jurisdiction arises when a defendant's contacts with the forum are continuous and systematic so that the exercise of jurisdiction is proper even if the cause of action did not arise from or relate to the defendant's forum contacts. *BMC Software*, 83 S.W.3d at 797.

"[S]pecial-appearance jurisprudence dictates that the plaintiff and the defendant bear shifting burdens of proof in a challenge to personal jurisdiction." *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). The plaintiff bears the initial burden to plead allegations that would bring the nonresident defendant within the reach of the long-arm statute. *Id.* If the plaintiff pleads sufficient jurisdictional allegations, the defendant must then negate all bases of personal jurisdiction alleged by the plaintiff. *Id.* The defendant can negate jurisdiction factually or legally. *Id.* at 659. "Factually, the defendant can present evidence that [she] has no contacts with Texas, effectively disproving the plaintiff's allegations." *Id.* However, the plaintiff may then submit its own evidence, affirming its allegations; it risks dismissal if it cannot present evidence establishing personal jurisdiction. *Id.* A defendant may also defeat personal jurisdiction by showing that even if the plaintiff's alleged facts are true, the evidence is legally insufficient, i.e., the defendant's contacts fall short of purposeful availment, or the plaintiff's claims do not arise from the alleged contacts, or traditional notions of fair play and substantial justice would be offended if jurisdiction over the defendant were exercised by the trial court. *Id.*

### *Specific Jurisdiction*

In this case, Abruzzo contends only that the trial court erred in granting Walesa's special appearance because it had specific jurisdiction over Walesa, not general jurisdiction. Accordingly, we will only address Abruzzo's specific jurisdiction argument.

In support of its argument, Abruzzo pled Walesa was aware of the foundation issues at the Property, and argues his lack of disclosure, fraudulent conduct, misrepresentations, and active concealment of those problems constitutes tortious acts that relegate him to the jurisdiction of Texas courts, and make the fiduciary shield doctrine inapplicable in this case.

The fiduciary shield doctrine holds that an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation. *Carone v. Retamco Operating, Inc.*, 138 S.W.3d 1, 12 (Tex. App.—San Antonio 2004, pet. denied); *SITQ E.U., Inc. v. Reata Restaurants, Inc.*, 111 S.W.3d 638, 650–51 (Tex. App.—Fort Worth 2003, pet. denied) (citing *Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 438 (Tex. 1982) (noting that fiduciary shield doctrine protects corporate officer or employee from trial court's exercise of general jurisdiction over him when all individual's contacts with Texas were on behalf of employer)). Although the fiduciary shield doctrine has not been explicitly adopted by the Texas Supreme Court, the doctrine is applied by intermediate appellate courts to jurisdictional claims and is limited to attempts to exercise general jurisdiction over a nonresident defendant. *Carone*, 138 S.W.3d at 12; *SITQ E.U., Inc.*, 111 S.W.3d at 651.

Abruzzo argues the fiduciary shield doctrine does not protect Walesa from the exercise of specific jurisdiction because his misrepresentations as an agent of Apache can subject him to individual liability. *See SITQ E.U., Inc.*, 111 S.W.3d at 651 (noting fiduciary shield doctrine does not apply when nonresident is subject to specific personal jurisdiction based on commission of intentional torts or fraudulent acts for which he may be held individually liable); *Wright v. Sage Engineering, Inc.*, 137 S.W.3d 228, 250–51 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (noting corporate agent can be held individually liable for fraudulent statements or

knowing misrepresentations even when made in capacity as corporate representative); *Gen. Elec. v. Brown & Ross Int'l Distribs., Inc.*, 804 S.W.2d 532–33 (Tex. App.—Houston [1st Dist.] 1990, writ. denied) (holding corporate officers who personally arranged theft of design plans, ordered counterfeit and mislabeled parts, and made representations to customers were subject to personal jurisdiction in Texas).

Abruzzo presented evidence that when Apache bought the Property in 2006 from W2, Ltd., it signed an Assignment, Acknowledgement and Bill of Sale in which Apache acknowledged the problems associated with the foundation of the Property. Because Walesa signed this acknowledgement as representative of Apache, Abruzzo claims Walesa was aware of the Property's foundation problems and did not disclose them to Abruzzo as required by the Purchase Agreement. Furthermore, Abruzzo presented an affidavit from Sandra Rogers, a listing broker who at the time was helping W2, Ltd. sell the Property at issue, and an affidavit from Angelo Cardarelli, who bought the Property from Apache and then assigned his rights under the Purchase Agreement to Abruzzo. Both affidavits note Walesa acknowledged there were problems with the Property's foundation, and that Apache, through Walesa, required those problems be repaired before Apache would close on the purchase from W2, Ltd.

Thus, Abruzzo contends the tortious acts established by this evidence are sufficient minimum contacts to establish the existence of specific jurisdiction, and given these contacts, traditional notions of fair play and substantial justice are not offended. *See Guardian Royal Exchange Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991). We disagree.

A review of the record shows there is no evidence Walesa had a duty to disclose the foundation problems with the Property, or that he failed to fulfill this obligation. Abruzzo points

to two provisions in the Purchase Agreement to suggest there was a duty to disclose the Property's foundation problems. One provision states Apache must provide the buyer with "a copy of any building inspection, environmental audits for the Property or any other study concerning the condition of the Improvements and/or compliance with applicable laws." There is no evidence any of these documents were withheld from Cardarelli, and in turn, from Abruzzo.

The 2006 Acknowledgment and Bill of Sale and the affidavits by Angelo Cardarelli and Sandra Rogers, which Abruzzo presented as evidence that Walesa was aware of foundation problems with the Property, show only that Walesa was aware of foundation problems *before* Apache purchased the property, and that he required those problems be fixed before Apache acquired the Property. In contrast to *Barclay v. Johnson*, 696 S.W.2d 334 (Tex. App.—Houston [14th Dist.] 1985, no writ), a case cited by Abruzzo where a corporate agent knowingly made misrepresentations about its corporation, there is no evidence in this case to show Walesa made any misrepresentations about the Property or that he had knowledge of *existing* problems with the Property when it was sold to Abruzzo.

Abruzzo points to another provision in the Purchase Agreement that states Apache must provide the buyer with "any warranty of the structural, mechanical, electrical, HVAC, plumbing, or roof, or of any other personal property that is included in the Property." The record shows there was a Transferable Limited Lifetime Warranty issued by Meinhardt Stabilizing Co., Inc. d/b/a Perma Jack of San Antonio relating to the foundation of the Property. However, this warranty is mentioned in relation to the sale of the Property from W2, Ltd. to Apache. While the warranty deals with the Property at issue, it is not clear if this warranty is pertinent to the Purchase Agreement between Apache and Cardarelli, and therefore, if there was a duty to release this information to Abruzzo.

Walesa asserts that even if this court found Walesa breached a duty in failing to provide certain documents, this duty arose out of a contract, i.e., the Purchase Agreement, and cannot be converted into an independent tort cause of action, as Abruzzo attempts to do in order to confer jurisdiction over Walesa. In *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493 (Tex. 1991), the Texas Supreme Court adopted a two-part test for determining whether a party's cause of action sounds in contract, tort, or both. 809 S.W.2d at 494–95; *Flying J Inc. v. Meda, Inc.*, 373 S.W.3d 680, 685–86 (Tex. App.—San Antonio 2012, no pet.). A court looks at (1) the source of the duty giving rise to the injury, and (2) the nature of the injury. *DeLanney*, 809 S.W.2d at 494–95; *Flying J Inc.*, 373 S.W.3d at 685–86.

> Regarding the source of the duty:
>
> If the defendant's conduct . . . would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort. Conversely, if the defendant's conduct . . . would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract.

*DeLanney*, 809 S.W.2d at 494; *Flying J Inc.*, 373 S.W.3d at 685; *see also Peco Constr. Co. v. Guajardo*, 919 S.W.2d 736, 738 (Tex. App.—San Antonio 1996, writ denied). As to the nature of the injury, a plaintiff's cause of action is ordinarily contractual if the only loss or damage is to "the subject matter of the contract." *See DeLanney*, 809 S.W.2d at 494.

In this case, the factual basis for the tort causes of action Abruzzo claims Walesa committed are alleged breaches of the provisions contained in the Purchase Agreement. Furthermore, the alleged loss or damage in this case, which deals with the purchase of the Property, is "the subject matter of the contract." *See id.* Therefore, we find Walesa did not commit independent torts that would confer Texas trial courts specific jurisdiction over him.

Walesa has shown he was not personally a party to the contract, as he undisputedly signed the Purchase Agreement in his representative capacity for Apache and had no separate and independent legal duty to Abruzzo imposed on him as a matter of law. There is no evidence of an act or omission committed by Walesa, individually, concerning the subject claim. Furthermore, Walesa established he did not do business in Texas nor engage in any transactions in Texas in his individual capacity at any time pertinent to the suit. He is not a resident of Texas, and is not required and does not maintain a registered agent for service in Texas. Walesa established he was served with process outside of Texas, does not maintain a place of business in Texas, and has no employees, servants, or agents in Texas.

Therefore, we hold there is sufficient evidence to support the trial court's judgment. *See BMC Software Belgium, N.V*, 83 S.W.3d at 795. We also hold the trial court did not have specific jurisdiction over Walesa because Walesa did not have the necessary minimum contacts and did not purposefully availed himself of the privilege of conducting activities within Texas. *Moki Mac*, 221 S.W.3d at 575.

## CONCLUSION

Based on the foregoing, we affirm the trial court's judgment granting Walesa's special appearance.

Marialyn Barnard, Justice